UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

JOHANNE STERLING and
JOSHUA CARTAGENA,

       Plaintiffs,

v.

CITY OF NEW YORK; New York City
Police Commissioner RAYMOND W. KELLY,
in his official capacity; New York City Police
Deputy Inspector ANTHONY BOLOGNA,
in his individual and official capacities; New
York City Police Officer CLAUDIO SANCHEZ,
Shield #1989, in his individual and official
capacities; New York City Police Officer
MARK HENRY, Shield #6715, in his individual
and official capacities; and New York City Police
Officers JANE AND JOHN DOES 1-20, in their
individual and official capacities,

       Defendants.

_____X

12 CV 7086

**COMPLAINT**

**JURY TRIAL
DEMANDED**



## PRELIMINARY STATEMENT

> [T]he . . . streets and parks . . . have immemorially been held in trust for the use of
> the public and, time out of mind, have been used for purposes of assembly, com-
> municating thoughts between citizens, and discussing public questions.  Such use
> of the streets and public places has, from ancient times, been a part of the privi-
> leges, immunities, rights, and liberties of citizens.  The privilege of a citizen of the
> United States to use the streets and parks for communication of views on national
> questions may be regulated in the interest of all;. . . but it must not, in the guise of
> regulation, be abridged or denied.

*Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939).

1. It is not an overstatement to say that the vitality of a constitutional democracy stands atop

    the essential liberties of free speech and the right of people to peaceably assemble on

    constitutionally protected public fora including the sidewalks of New York City.

2. However, the sidewalks of New York City are not safe for free speech or for protest.

3. One of the most pernicious and chilling forms of criminalization of free speech, or criminalization of dissent, is the perpetration by the New York City Police Department, and its officers, of the use of sidewalk arrests in which they target for false arrest peaceable persons associated by activity or proximity to dissent and protest.

4. Sidewalks are, constitutionally and practically, a safe haven for peaceable protest and political association, a space upon which people may engage others in free speech, in collective action, in order to persuade or enlist or debate as a fundamental pillar of the political and democratic process. Standing upon such spaces is to be a safe haven for peaceable protest.

5. In New York City, police routinely abuse their authority to engage in the false arrest of protesters (or persons associated with protest) who are lawfully present on the sidewalks.

6. The New York City Police Department (NYPD) fundamentally altered the exercise of free speech in New York City by eliminating the guarantees to engage in peaceable protest on the City's sidewalks without fear of arrest and police violence.

7. These unconstitutional actions send a threatening message to those engaging in political protest and to the public – free speech activities are viewed as criminal by the NYPD and those who participate in demonstrations, associate with them, or are just in the vicinity, assume a risk of police violence and false arrest.

8. Defendants' actions create a substantial chilling effect and deterrent to First Amendment protected activity by burdening free speech activities with the risk of arrest, of being threatened with physical harm and of being, in fact, injured by the police, bound with handcuffs and having one's identification and association with a demonstration be collected and recorded by the police and transferred to federal and other law enforcement

authorities for data warehousing and collection. These are civil rights violations that the Constitution does not permit.

9.  The action herein is brought to vindicate the rights of plaintiffs and of protesters against the NYPD. It challenges the insidious use of sidewalk arrests, and seeks to hold accountable those officers who - - acting contrary to clearly established constitutional law and precedent - - perpetrate such police misconduct and seek to sweep the City streets of dissent and protest.

10. On September 24, 2011, Plaintiffs Johanne STERLING and Joshua CARTAGENA were subject to false arrest while peaceably standing on the sidewalk of East 12th Street between University Place and Fifth Avenue.

11. The police action that resulted in their arrest was under the overall charge of Defendant and NYPD Deputy Inspector Anthony BOLOGNA.

12. In addition to participating in the false arrest of Plaintiffs, BOLOGNA engaged in a gratuitous and violent assault using pepper spray against protestors, including Plaintiff STERLING.

13. On September 24, 2011, Plaintiffs STERLING and CARTAGENA had departed and dispersed from an Occupy Wall Street (OWS) demonstration at Union Square. Each had been and was engaged in First Amendment protected activity.

14. Union Square demonstrators and others had in natural course dispersed in different directions presumably depending on what their personal destinations may have been.

15. Plaintiff STERLING left Union Square and headed south along University Place. Sterling was walking on the sidewalk of University Place with the original intention of proceeding

3

to Zuccotti Park. Zuccotti Park was the site of ongoing OWS demonstration and free speech activities, assembly and association.

16. At the intersection of East 12th Street and University Place, there was a violent attack or use of force by police against some number of protesters.

17. Both Plaintiffs turned onto and upon the sidewalks of East 12th Street between University Place and Fifth Avenue.

18. In this block of East 12th Street, the NYPD, including officers under the command of Defendant BOLOGNA, executed indiscriminate trap-and-arrest tactics to unlawfully trap and arrest protestors, including or predominantly persons who had merely been present or moving upon the sidewalk, in sweeping mass civil rights violations.

19. Officers deployed orange netting to indiscriminately trap and arrest persons without regard to the conduct of those being arrested, without regard to the existence of probable cause, without individualized or particularized probable cause to arrest and in the absence of fair notice or warnings calculated to reach those subject to arrest.

20. These were, with the use of the orange netting, literally dragnet mass arrests devoid of probable cause.

21. While JOHANNE STERLING was seized and/or arrested by the NYPD on the north sidewalk near the corner of East 12th Street at University Place, BOLOGNA approached STERLING and others who were corralled by the orange netting and police lines.

22. BOLOGNA gratuitously and without any lawful cause discharged his pepper spray against STERLING and others.

23. After BOLOGNA's violent, shocking and outrageous use of pepper spray against these peaceful persons, the NYPD's police netting yielded.

24. The use of force, the discharge of pepper spray, against STERLING by BOLOGNA was not merely excessive. It was gratuitous. The NYPD has long been on notice that BOLOGNA has engaged in actual and/or alleged misconduct against protestors and has retained him on the police force, indeed promoting him, so that not only does he have continued authority and opportunity to act unlawfully and abusively against persons engaged in free speech activity, but through promotion he has even greater authority under color of state law to engage in malfeasance and civil rights violations against protestors.

25. STERLING ultimately crossed the street to the south sidewalk and proceeded west, where she was - - yet again - - subjected to the NYPD's indiscriminate use of sidewalk arrests. Again, without warning or notice or probable cause, the NYPD used orange netting and police lines to trap-and-arrest STERLING.

26. The officer who was identified as the arresting officer for Plaintiff STERLING was Defendant Mark HENRY.

27. In order to subject STERLING to the pains and risk of the criminal prosecution process, and to justify his false arrest, Officer HENRY swore out a false declaration under penalty of perjury claiming that he personally observed STERLING "completely blocking vehicular traffic . . . so that no vehicles could pass." He also falsely attested that he personally observed STERLING "remain at the above location [i.e., 'on the corner of University Place and E. 12th Street'] after [STERLING] had been advised by the police and by [Defendant HENRY] that [STERLING] was obstructing vehicular traffic and must break up and move."

28. Plaintiff CARTAGENA left Union Square and headed south along the sidewalk of University Place. From his position moving along the sidewalk, CARTAGENA was taking photographs to document protest activity.

29. Plaintiff CARTAGENA turned onto the north sidewalk of East 12th Street from University Place, proceeding west toward Fifth Avenue. At some point, he crossed to the south sidewalk of East 12th Street.

30. CARTAGENA, also, was subjected to the NYPD's indiscriminate sidewalk arrest tactic.

31. The officer who was identified as the arresting officer for Plaintiff CARTAGENA was Defendant Claudio SANCHEZ.

32. In order to subject CARTAGENA to the pains and risk of the criminal prosecution process, and to justify his false arrest, Officer SANCHEZ swore out a false declaration under penalty of perjury claiming that he personally observed CARTAGENA present "on the corner of E. 12th and 5th Avenue" and, with others, was "completely blocking pedestrian and vehicular traffic on that sidewalk and on the street so that no one could pass." He also falsely attested that he personally advised CARTAGENA to disperse, and that CARTAGENA refused to "break up and move."

33. The police did not direct either Plaintiff to disperse. Neither was blocking vehicular traffic, as each was standing on the sidewalk. Neither was blocking pedestrian traffic.

34. Each, however, was deemed to be a protestor or associated with protest by police, and therefore was targeted for arrest while lawfully on the sidewalk.

35. This action seeks the recovery of compensatory damages, as well as the imposition of punitive damages against the officers participating in the clearly unconstitutional indiscriminate mass and false arrests (including Defendants DOES, BOLOGNA,

HENRY and SANCHEZ) and also against BOLOGNA specifically and additionally for his wanton pepper spray attack against STERLING and others. Plaintiffs seek a finding and a Declaratory Judgment that such sidewalk arrests, as well as the gratuitous pepper spray attack by BOLOGNA, were unconstitutional and unlawful.

36.  As a result of the unlawful arrests, personal data and information pertaining to the Plaintiffs and their arrests have been stored in law enforcement record keeping and data warehousing systems, the dissemination of which poses likelihood and risk of personal and reputational harm.

37. Plaintiffs also seek expungement and disgorgement of all records, data and intelligence that was generated or derived through their false arrest, including that which may have been transferred or made available to third parties or federal law enforcement or other government agencies.

## JURISDICTION

38. This civil rights action is brought pursuant to 42 U.S.C. § 1983 and § 1988. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(3) and (4) (Civil Rights) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

39. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 – 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

40. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 as the municipal Defendant is deemed to reside therein and a substantial part of the events or omissions giving rise to the claims occurred therein.

**JURY DEMAND**

41. Plaintiffs demand trial by jury in this action on each and every one of their claims.

**PARTIES**

**Plaintiffs**

42. Plaintiff JOHANNE STERLING works at a non-profit organization and resides in Harlem in New York City. She was at Union Square on September 24, 2011, to participate in protected First Amendment activities.

43. Plaintiff JOSHUA CARTAGENA is a recent graduate from Rutgers University who resides in East Brunswick, New Jersey. He was at Union Square on September 24, 2011, to document the protest activities of the Occupy Wall Street Movement and to express his political support.

**Names and Un-named (Doe) Defendants**

44. Defendant CITY OF NEW YORK is a municipal corporation within the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the New York City Police Department (NYPD), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

45. Defendant ANTHONY BOLOGNA is, and was, at all times relevant herein, a Deputy Inspector within the New York City Police Department, which is an agency of the City of New York.

46. As a Deputy Inspector, Defendant BOLOGNA is, and was, at all times relevant herein, acting within the course and scope of his employment as an agent and employee of Defendant CITY OF NEW YORK.

47. Defendant BOLOGNA is, and was, at all times relevant herein, acting under color of law.

48. As a Deputy Inspector, Defendant BOLOGNA is responsible for carrying out the policies of the NYPD, as well as the supervision and control of officers who are or were employed by the NYPD, who are under his command and/or who report to him, including the Defendants named herein and those to be named.

49. Defendant BOLOGNA is sued in his individual and official capacities.

50. Defendant MARK HENRY, Shield #6715, is and/or was, at all times relevant herein, an officer, employee and agent of the NYPD, a municipal agent of the City of New York. HENRY caused and participated in the trap, detention and/or arrest of Plaintiff STERLING notwithstanding the absence of probable cause or lawful justification. He is identified as the arresting officer for Plaintiff STERLING on the Desk Appearance Ticket and criminal court complaint concerning her arrest.

51. HENRY is sued in his individual and official capacities.

52. Defendant RAYMOND W. KELLY is, and was, at all times relevant herein, the Commissioner of the New York City Police Department, which is an agency of the City of New York. KELLY is a policymaker for the CITY OF NEW YORK and the NYPD and is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD.

53. Commissioner KELLY is sued in his official capacity.

54. Defendant CLAUDIO SANCHEZ, Shield #1989, is and/or was, at all times relevant herein, an officer, employee and agent of the NYPD. SANCHEZ caused and participated in the trap, detention and/or arrest of Plaintiff CARTAGENA notwithstanding the absence of probable cause or lawful justification. He is identified as the arresting officer

for Plaintiff CARTAGENA on the Desk Appearance Ticket and criminal court complaint concerning his arrest.

55. SANCHEZ is sued in his individual and official capacities.

56. Defendants JOHN and JANE DOES 1 – 20 (collectively, "DOES") are unidentified NYPD police officials, officers or command staff who jointly caused Plaintiffs to be unlawfully seized, trapped, detained and/or arrested or did in fact effectuate their arrests.

57. These yet-unidentified Defendants participated in Plaintiffs' seizures and arrests notwithstanding the absence of probable cause or lawful justification.

58. The DOE Defendants are sued in their individual and official capacities.

59. The true names and Shield Numbers of the DOES are not currently known to Plaintiffs. However, the DOE Defendants are employees or agents of the NYPD. Accordingly, the DOE Defendants are entitled to representation in this action by the New York City Law Department (Law Department) upon their request pursuant to New York General Law § 50-k. The Law Department is therefore, hereby put on notice that: (a) Plaintiffs intend to name said NYPD officers as Defendants in an amended pleading once their true names and Shield Numbers become known to Plaintiffs and (b) the Law Department should immediately begin preparing their defense in this action.

## FACTUAL ALLEGATIONS

60. On September 24, 2011, hundreds of demonstrators associated with the Occupy Wall Street (OWS) Movement, including Plaintiffs CARTAGENA and STERLING, gathered and/or assembled in Union Square to engage in free speech activities.

61. Plaintiff CARTAGENA was also there to document and record the OWS Movement.

62. Following the assembly in Union Square, many demonstrators, including Plaintiff STERLING, decided to return to Zuccotti Park, the physical organizing hub for associational and free speech activities of OWS in New York City.

63. Demonstrators dispersed in different directions from Union Square.

64. Plaintiff STERLING left Union Square with the intention of returning to Zuccotti Park.

65. STERLING headed south on University Place along the sidewalk.

66. Plaintiff CARTAGENA had exited Union Square also by walking south on University Place along the sidewalk.

67. As CARTAGENA moved along the sidewalk, he was documenting and recording the demonstration by taking photographs with his phone – an activity that he continued until he was subjected to false arrest by Defendants.

68. As STERLING was at the intersection of University Place and East 12th Street, she witnessed NYPD officers brutalizing protesters, including at least one incident where a protester was brutally beaten and/or subjected to use of violent force by the NYPD.

69. STERLING was horrified and scared by these police actions.

70. STERLING departed from the intersection of University Place and East 12th Street and proceeded onto the north sidewalk of East 12th Street, moving west on the sidewalk from University Place towards Fifth Avenue.

71. STERLING along with other pedestrians moving westward also on the sidewalk were stopped by two uniformed police officers who stood on the sidewalk and prevented those persons from departing or moving further west.

72. Thereupon and/or thereafter, STERLING and others were seized and/or arrested by NYPD officers, including Defendant DOES, who used orange netting to corral and seize and/or arrest her and others on the sidewalk with a shop behind them.

73. STERLING was seized and corralled by the orange netting.

74. STERLING was not ordered to disperse.

75. STERLING did not refuse to comply with a lawful order of the police to disperse.

76. STERLING had been walking on the sidewalk. She was not blocking vehicular traffic in any way, much less "completely blocking vehicular traffic . . . so that no vehicles could pass."

77. STERLING did not obstruct pedestrian traffic. Indeed, STERLING and those who were moving westward on the sidewalk had been stopped by police. Plaintiff STERLING did not recklessly or intentionally create any risk of public inconvenience, alarm or annoyance.

78. Defendant BOLOGNA was physically present at the scene and near the intersection of East 12th Street and University Place at this time.

79. BOLOGNA was in "overall charge that day," according to a public statement made by his attorney. BOLOGNA caused or ordered the use of the orange netting enclosure to arrest persons on East 12th Street between University Place and Fifth Avenues, including Plaintiffs.

80. While STERLING was unlawfully seized and/or arrested inside the orange netting trap set jointly by Defendants DOES and BOLOGNA near the corner of East 12th Street and University Place, Defendant BOLOGNA gratuitously pepper sprayed STERLING in her face and neck at close range from mere feet away.

81. BOLOGNA had been standing in the vicinity but some number of feet away from the orange netting / arrest corral near the corner of East 12th Street and University Place, in which STERLING was seized and/or arrested.

82. BOLOGNA determined and decided to discharge his service weapon; i.e., pepper spray.

83. BOLOGNA walked over to the orange netting / arrest area.

84. BOLOGNA lifted his arm holding the canister to his shoulder height.

85. BOLOGNA aimed and discharged the pepper spray in the direction of protestors and persons seized within the orange netting / arrest area.

86. BOLOGNA sprayed the faces of persons who were seized in the orange netting corral.

87. Among the persons sprayed by BOLOGNA was JOHANNE STERLING.

88. There was no legal basis, reasonable suspicion or probable cause for Defendants DOES and BOLOGNA to detain, seize and/or arrest STERLING inside the orange netting on the north sidewalk on East 12th Street.

89. There was no legal basis for Defendant BOLOGNA to intervene against Plaintiff STERLING through any use of pepper spray. There was no cause whatsoever for Defendant BOLOGNA to use any force against STERLING, including in particular through the use of pepper spray.

90. BOLOGNA's use of pepper spray was excessive and unreasonable.

91. The pepper spray, which was gratuitously deployed by Defendant BOLOGNA against Plaintiff STERLING, caused her significant pain; burning on her face, neck and around her eyes; and difficulty breathing and speaking.

92. Defendant BOLOGNA pepper sprayed Plaintiff STERLING in violation of NYPD guidelines regarding the use of pepper spray and/or use of force.

93. According to public reports, following an NYPD internal investigation of Defendant BOLOGNA's deployment of pepper spray on September 24, 2011, he was given a "command discipline" and docked 10 vacation days based on a finding that he had violated NYPD guidelines.

94. In an unusual decision, the CITY OF NEW YORK declined to defend Defendant BOLOGNA in another civil lawsuit concerning his deployment of pepper spray on September 24, 2011. According to a public statement by the Chief of the New York City Law Department's Special Federal Litigation Division, the City is required to provide representation and indemnification if an employee was acting in the discharge of his or her duties and was not in violation of any rules or regulations of his agency at the time in question. The decision to not indemnify BOLOGNA was apparently made based on the City's conclusion that his conduct was in violation of NYPD rules or regulations regarding use of force in general and/or use of pepper spray in particular.

95. After the violence of the pepper spray attack by BOLOGNA, the police netting and line yielded to allow STERLING to leave that immediate location.

96. At some point NYPD officers then deployed orange netting and a police line across East 12th Street both at the intersection west of University Place and also along Fifth Avenue.

97. Neither BOLOGNA nor any NYPD officer provided or offered medical care or aid to tend to the ongoing pain and injury caused by the pepper spray.

98. STERLING and others who had been pepper sprayed were located in front of a shop where some of the people present tried to get water to help with their injuries.

14

99. STERLING continued to experience difficulty speaking and breathing, and continued to experience burning on her face, neck and eye area due to being subjected to pepper spray by Defendant BOLOGNA.

100. STERLING crossed to the south side of East 12th Street.

101. Ultimately, STERLING walked west along the East 12th Street south sidewalk.

102. As STERLING walked on the sidewalk to the western end of East 12th Street, some distance before the corner of Fifth Avenue, STERLING was approached by law enforcement officers.

103. Yet again, NYPD officers, including Defendants HENRY and DOES, indiscriminately seized, detained and arrested STERLING along with other protestors by deploying orange netting and police lines to enclose them.

104. There was no particularized probable cause to arrest STERLING for Disorderly Conduct in violation of PL240.20(5) or PL240.20(6), as so sworn by Defendant HENRY in a written statement for the purposes of criminal prosecution.

105. This second indiscriminate trap and arrest of JOHANNE STERLING occurred on the south sidewalk of East 12th Street closer to the corner of Fifth Avenue. This is the same area at which Plaintiff CARTAGENA came to be indiscriminately and unlawfully trapped and arrested through the use of orange netting and police lines to capture persons on the sidewalk.

106. Initially, when CARTAGENA arrived at East 12th Street, he turned right from his southbound travel along University Place and walked westbound along the north side of the sidewalk on East 12th Street.

107. As CARTAGENA was at the intersection of University Place and East 12th Street, he witnessed NYPD officers brutalizing protesters.

108. CARTAGENA was scared by these police actions.

109. CARTAGENA departed from the intersection of University Place and East 12th Street and proceeded onto the north sidewalk of East 12th Street, moving west on the sidewalk from University Place in the direction of Fifth Avenue.

110. At some point, CARTAGENA crossed the street onto the sidewalk on the south side of East 12th Street. He continued walking west on the sidewalk along East 12th Street.

111. CARTAGENA and others were seized and/or arrested by NYPD officers, including Defendant DOES and SANCHEZ, who used orange netting and police lines to enclose and seize and/or arrest him and others on the sidewalk.

112. CARTAGENA, seized and enclosed by the orange netting and police lines, was not free to leave.

113. CARTAGENA had not been ordered to disperse.

114. CARTAGENA had not refused to comply with a lawful order of the police to disperse.

115. Indeed, at the time of his arrest, CARTAGENA had been present on the sidewalk.

116. As CARTAGENA had been present on the sidewalk, he had not been blocking vehicular traffic in any way, much less "completely blocking . . . vehicular traffic . . . on the street so that no one could pass."

117. CARTAGENA did not obstruct pedestrian traffic. Indeed, CARTAGENA had been moving westward on the sidewalk when he was, without fair notice or warning, suddenly trapped and arrested by police through the use of the orange netting to capture those on

the sidewalk. Plaintiff CARTAGENA did not recklessly or intentionally create any risk of public inconvenience, alarm or annoyance.

118. There was no particularized probable cause to arrest CARTAGENA on or in the vicinity of the corner of East 12th Street and Fifth Avenue for Disorderly Conduct in violation of PL240.20(5) or PL240.20(6), as so sworn by Defendant SANCHEZ to facilitate and justify the arrest and in a written statement for the purposes of criminal prosecution.

119. Defendant BOLOGNA remained in overall charge of police activities, including the mass arrests and the arrest of STERLING and CARTAGENA on East 12th Street near Fifth Avenue.

120. Defendant BOLOGNA had, himself, moved from his earlier location on East 12th Street near the University Place intersection (i.e., the site of the first seizure and/or arrest of STERLING and BOLOGNA's pepper spraying of her) to the location of East 12th Street near Fifth Avenue (the site of the second seizure and/or custodial arrest of STERLING and the site of the seizure and arrest of CARTAGENA).

121. BOLOGNA caused and/or participated and/or approved and/or ordered the arrests that included those on East 12th Street near Fifth Avenue; i.e., those involving the Plaintiffs STERLING and CARTAGENA.

122. At the scene of East 12th Street and Fifth Avenue BOLOGNA ordered officers to engage in the mass arrest.

123. There was no lawful basis on which to order the dispersal of the persons who were physically present on the sidewalk, including Plaintiffs STERLING and CARTAGENA.

17

124. Defendants BOLOGNA, HENRY, SANCHEZ and DOES knew or should have known that there was no lawful basis on which to execute the mass arrest of protestors and others engaged in protected activity for merely being present on the sidewalk.

125. Defendants BOLOGNA, HENRY, SANCHEZ and DOES knew that no audible communication was given for Plaintiffs CARTAGENA or STERLING to disperse and that they had not committed a refusal to obey a dispersal order. Defendants knew that the arrests were indiscriminate and in the absence of particular probable cause.

126. To the extent that the Defendants BOLOGNA, HENRY, SANCHEZ and DOES were intent on engaging in a group or mass arrest for disorderly conduct, they knew or should have known that no fair notice or dispersal order had issued; or in the alternative, that no such fair notice or order had occurred in a manner calculated to be heard by the scores subject to potential arrest.

127. Defendants BOLOGNA, HENRY, SANCHEZ and DOES knew or should have know that the indiscriminate nature of the use of orange netting for mass seizure and the manner of arrests ensured that within the arrest groups were persons who had committed no misconduct at all, including those such as Plaintiffs STERLING and CARTAGENA.

128. Plaintiff STERLING requested medical attention for her pepper spray injuries from the NYPD while she was handcuffed at the scene. NYPD officers refused to provide any ameliorative or medical care for her injuries, including refusing to decontaminate her.

129. NYPD officers placed Plaintiff STERLING in an enclosed police van after she had been pepper sprayed. As a result, she continued to experience the after-effects of the spray without the benefit of medical care.

130. Ultimately, for two days afterward Plaintiff STERLING continued to experience physical discomfort including itching, tingling and a rash from the pepper spray.

131. Plaintiff CARTAGENA, as were others, was subjected to excessively tight and painful handcuffing. Plaintiff CARTAGENA's hands were numb while he was handcuffed at the site of his arrest. However, he understood he was unable to have his handcuffs removed and re-tied after observing NYPD officers tell others that they could not re-tie handcuffs because did not have any "cutters" with which to remove the cuffs.

132. Plaintiff CARTAGENA experienced numbness and tingling in his left thumb for two months after his arrest due to how tightly and how long he had been handcuffed. He also had bruising, scrapes and swelling in his wrists from the handcuffs for almost two weeks after his arrest.

133. As a consequence of the acts complained of herein, Plaintiffs have suffered monetary and non-monetary harm, emotional distress, loss of liberty, deprivation of constitutional rights, physical and non-physical injuries.

## VIOLATIONS OF CLEARLY ESTABLISHED LAW

134. The actions of the above-referenced Defendants violated clearly established and well settled federal constitutional rights, including:

    a. Freedom from the unreasonable seizure of one's person, including through false arrest and through unreasonable and excessive use of force;

    b. Freedom from government disruption of, interference with, and abridgment of free speech, assembly, associational and other First Amendment protected activities.

135. Clearly established constitutional law was violated where sidewalk arrests were made of Plaintiffs, who were lawfully moving or present as individuals upon the sidewalks, public fora on which free speech activities are especially and constitutionally protected.

136. Clearly established law was violated by the arrest of Plaintiffs in the absence of probable cause particularized with respect each Plaintiff as an individual.

137. The use of orange netting to indiscriminately seize and arrest persons on the sidewalk, including Plaintiffs, violated clearly established law requiring probable cause to be particularized to the individual. Clearly established law does not permit such indiscriminate dragnet arrests, as reflected and evidenced by the use of the orange netting to enclose, trap and arrest persons on the sidewalks who were not obstructive or engaged in unlawful conduct.

138. To the extent Defendants seek to justify the arrest of Plaintiffs as having been based on their association with or proximity to others who the police allege have engaged in misconduct, it violates clearly established law for the defendants to impute alleged culpability to others who were not engaged in such alleged misconduct. Such guilt by political association has long been rejected under clearly established law.

139. Clearly established law requires a basis for a dispersal order to issue to persons engaged in or associated with First Amendment protected activity and, here, no such basis existed to order Plaintiffs to disperse.

140. Even were one to assume *arguendo* a lawful basis to order dispersal of Plaintiffs, clearly established law requires prior to the initiation of the group arrest through the use of orange netting and police lines that seized and/or enclosed all persons including Plaintiffs who were peaceably upon the sidewalks, that there first be issuance of a dispersal order,

that the manner of such issuance be calculated to be heard by those subject to potential

arrest, that notice and time to comply with such a dispersal order is required, and that a

refusal to comply be committed.

141.  Clearly established law was violated by the arrests of Plaintiffs for disorderly conduct in

the absence of the constitutionally required fair notice.

142.  Clearly established law was violated by Defendant BOLOGNA with respect to the pepper

spray assault, as JOHANNE STERLING had a clearly established constitutional right to

not be physically assaulted by police gratuitously. Clearly established law prohibited the

use of unreasonable seizures, unreasonable and excessive use of force, was violated by

the pepper spray attack which was completely without legal cause, justification or excuse.

In addition to the clearly established law, which BOLOGNA violated, he was

additionally placed on notice as to the impropriety of his attack under NYPD policies

and/or rules regarding use of force and/or pepper spray which he also violated.

143.  BOLOGNA's gratuitous pepper spray attack was perpetrated maliciously, wantonly

and/or oppressively such that issuance of punitive damages against BOLOGNA is

justified and appropriate. Among other reasons, the attack was perpetrated in reckless and

callous disregard, or indifference, to the rights of STERLING and of the others against

whom BOLOGNA directed his attack. BOLOGNA's attack constituted a misuse and

abuse of the authority vested and entrusted to him as an officer, whose job is to protect

constitutional rights, including the right to dissent, to say nothing of the obvious

obligation to refrain from using chemical weapons gratuitously against groups of

protestors. BOLOGNA made no effort to secure medical attention for those who he

attacked, thereby increasing the severity of injury. BOLOGNA's attack is made all the

more reprehensible in that he attacked peaceful protestors who were already corralled and restrained by the NYPD's use of police lines, show of force and use of authority.

144. Prior to the misconduct of September 24, 2011, Defendant CITY OF NEW YORK has been put on notice of an overwhelming amount of evidence that Defendant BOLOGNA has engaged in repeated acts of unconstitutional conduct with regard to individuals engaged in First Amendment protected activity including, *inter alia*, BOLOGNA's repeated acts of unlawful conduct towards protesters.

145. In advance of the events of September 24, 2011, the Defendant CITY OF NEW YORK was placed on notice as to the unconstitutional and unlawful conduct of BOLOGNA towards protestors by, among other factors, the following civil rights lawsuits in which BOLOGNA is, or was, named as a Defendant and alleged to have engaged in unlawful and/or unconstitutional misconduct:

    a. *Posr v. Camejo*, 07-cv-07583 (KPC) (S.D.N.Y.) (challenge to false arrest ordered by Defendant Bologna during policing of 2004 Republican National Convention (RNC) demonstrations);

    b. *Cohen v. City of New York*, 05-cv-06780 (RJS) (S.D.N.Y.) (challenge to false arrest and malicious prosecution of individual observing police activity where Defendant Bologna in supervisory position);

    c. *Black v. City of New York*, 05-cv-03616 (RJS) (S.D.N.Y.) (settlement of $30,000 in challenge to false arrest, excessive force and conditions of confinement where Defendant Bologna in supervisory position during policing of 2004 RNC demonstrations);

    d. *Greenwald v. City of New York*, 05-cv-01566 (RJS) (S.D.N.Y.) (challenge to false arrest where Defendant Bologna in supervisory position during policing of 2004 RNC demonstrations);

    e. *Kalra v. City of New York*, 05-cv-01563 (RJS) (S.D.N.Y.) (same);

    f. *Hershey-Wilson v. City of New York*, 05-cv-07026 (S.D.N.Y.) (settlement of $13,000 in challenge to false arrest, excessive force and conditions of confinement where Defendant Bologna in supervisory position during policing

of 2004 RNC demonstrations);

g. *MacNamara v. City of New York*, 04-cv-09216 (RJS) (S.D.N.Y.) (challenge to indiscriminate mass arrests without individualized determinations of probable cause at or in the vicinity of the 2004 RNC demonstrations on behalf of class of 1,800 individuals where Defendant Bologna in supervisory position);

h. *Burley v. City of New York*, 03-cv-00735 (WHP) (S.D.N.Y.) (challenge to mass unlawful arrests during 2002 World Economic Forum demonstrations).

146. Although Defendant CITY OF NEW YORK has been put on notice of the overwhelming amount of evidence that Defendant BOLOGNA has engaged in repeated acts of unconstitutional conduct with regard to individuals engaged in First Amendment protected activity, it has failed to supervise, train, instruct and discipline Defendant BOLOGNA, and instead, ratified and encouraged his conduct by promoting him from Captain to Deputy Inspector in 2006; and allowing him to continue to have supervision, command and direct participation in policing political demonstrations.

147. Indeed, the CITY OF NEW YORK has ratified and conveyed approval and/or tolerance for Defendant BOLOGNA's misconduct against protestors. There was substantial media attention and public condemnation of BOLOGNA's use of pepper spray in the events underlying this litigation and, even with such massive negative attention, the CITY OF NEW YORK only imposed a slight corrective action, a slap on the wrist without removing him from duties or opportunity for future similar misconduct and violations of the constitutional rights of demonstrators and those associated with them.

148. Defendant CITY OF NEW YORK has failed to take disciplinary and corrective action in response to police misconduct when it occurs at political demonstrations. These failures demonstrate a tolerance, acquiescence, deliberate indifference and the failure to correct misconduct when it occurs against those engaged in First Amendment protected activities and those who associate with them. The CITY's failure to discipline and take corrective

action sends a message to the NYPD, including Defendant BOLOGNA, that there is no

price to pay when misconduct occurs.

149. The existence of Defendant CITY OF NEW YORK's policy, practice and/or custom of

failing to take disciplinary and corrective action in response to police misconduct when it

occurs at political demonstrations directly caused the violation of Plaintiffs'

constitutional rights as described herein.

150. The acts of false arrest also justify issuance of punitive damages against Defendants

BOLOGNA, HENRY, SANCHEZ and each involved DOE. The circumstances of the

false arrest - - in which Plaintiffs were arrested in whole or part because of their

association with protest activity - - were perpetrated maliciously, wantonly and/or

oppressively. These false arrests were perpetrated in reckless and callous disregard, or

indifference to, the rights of STERLING and CARTAGENA and all others who were

surrounded, trapped and arrested on the sidewalk in these indiscriminate mass arrests that

targeted persons engaged in or associated with protest activity. The perpetration of these

false arrests are even more severe and harsh in that they targeted persons engaged in or

associated with protest, with the effect of disrupting constitutionally protected free speech

activity that is at the heart of the functioning of a democracy and within the time honored

and cherished fundamental rights of people. The swearing of false statements under oath

by Defendants HENRY and SANCHEZ for the purposes of criminal prosecution and to

justify the false arrests additionally justifies issuance of punitive damages. The injury

caused by such sweeping mass false arrests, which swept up not only Plaintiffs

STERLING and CARTAGENA but also scores of others peaceably present on the

sidewalks, was to send a chilling message to those who might engage in or come near

free speech activities, that to do so they risk arrest regardless of the legality of their

conduct.

### NOTICE OF CLAIM PURSUANT TO § 50-e, NEW YORK GENERAL MUNICIPAL LAW

151. All conditions precedent to jurisdiction under the New York General Municipal Law with

respect to the claims herein against the City have been satisfied sufficient to establish

jurisdiction for the purpose of Plaintiffs' state law claims.

152. Plaintiffs have each filed a Notice of Claim under New York General Municipal Law

§ 50-e.

153. At least 30 days have elapsed since the service of each such Notice of Claim and the

adjustment or payment thereof has been neglected or refused.

### COUNTS

### COUNT I
### False Arrest Claims by Plaintiff STERLING
### Against Defendants BOLOGNA, HENRY and DOES
### (First, Fourth and Fourteenth Amendments; 42 U.S.C. § 1983;
### New York State Constitution, New York State Law and Common Law)

154. Paragraphs 1 through 152 are hereby incorporated by reference as if set forth herein.

155. The arrest of Plaintiff STERLING was unreasonable and perpetrated in the absence of

probable cause and in violation of the Fourth Amendment, the Fourteenth Amendment

and 42 U.S.C. §1983.

156. Defendants BOLOGNA, HENRY and DOES caused, participated in, executed, caused to

be executed, failed to intervene to cause the cessation of, approved and/or ratified the

arrest of Plaintiff STERLING without probable cause on September 24, 2011.

157. The arrest of Plaintiff STERLING disrupted, abridged and/or terminated the ability of STERLING to continue to engage in First Amendment protected activities and, as such, violated the First Amendment rights of Plaintiff STERLING.

158. The acts and omissions of Defendants BOLOGNA, HENRY and DOES constitute deliberate indifference to the constitutional rights of Plaintiff STERLING.

159. Such acts and or omissions of Defendants BOLOGNA, HENRY and DOES additionally violated the rights of Plaintiff STERLING pursuant to the corresponding provisions of the New York State Constitution, and constitute false arrest under New York State law and common law.

**COUNT II**
**False Arrest Claims by Plaintiff CARTAGENA**
**Against Defendants BOLOGNA, SANCHEZ and DOES**
**(First, Fourth and Fourteenth Amendments; 42 U.S.C. § 1983;**
**New York State Constitution, New York State Law and Common Law)**

160. Paragraphs 1 through 152 are hereby incorporated by reference as if set forth herein.

161. The arrest of Plaintiff CARTAGENA was unreasonable and perpetrated in the absence of probable cause and in violation of the Fourth Amendment, the Fourteenth Amendment and 42 U.S.C. §1983.

162. Defendants BOLOGNA, SANCHEZ and DOES caused, participated in, executed, caused to be executed, failed to intervene to cause the cessation of, approved and/or ratified the arrest of Plaintiff CARTAGENA without probable cause on September 24, 2011.

163. The arrest of Plaintiff CARTAGENA disrupted, abridged and/or terminated the ability of STERLING to continue to engage in First Amendment protected activities and, as such, violated the First Amendment rights of Plaintiff CARTAGENA.

164. The acts and omissions of Defendants BOLOGNA, SANCHEZ and DOES constitute deliberate indifference to the constitutional rights of Plaintiff CARTAGENA.

165. Such acts and/or omissions of Defendants BOLOGNA, SANCHEZ and DOES additionally violated the rights of Plaintiff CARTAGENA pursuant to the corresponding provisions of the New York State Constitution, and constitute false arrest under New York State law and common law.

**COUNT III**
**Assault and Battery and Excessive Force Claims by Plaintiff STERLING**
**Against Defendant BOLOGNA**
**(First, Fourth and Fourteenth Amendments; 42 U.S.C. § 1983;**
**New York State Constitution, New York State Law and Common Law)**

166. Paragraphs 1 through 152 are hereby incorporated by reference as if set forth herein.

167. The deployment of pepper spray by Defendant BOLOGNA against Plaintiff STERLING was without legal cause, basis, justification or excuse.

168. The pepper spray attack constituted an unreasonable seizure and use of force, and excessive use of force in violation of the Fourth and Fourteenth Amendments, 42 U.S.C. §1983, and the corresponding provisions of the New York State Constitution, New York State law and common law.

169. Said use of force constituted assault and battery under New York State law and common law.

170. The arrest of Plaintiff STERLING disrupted, abridged and/or terminated the ability of STERLING to continue to engage in First Amendment protected activities and, as such, violated the First Amendment rights of Plaintiff STERLING and the corresponding provisions of the New York State Constitution.

**COUNT IV**
**Failure to Discipline and Negligent Retention of Defendant BOLOGNA**
**by the CITY OF NEW YORK**
**(*Monell* Claim Against Defendant CITY OF NEW YORK; 42 U.S.C. § 1983 - Failure to**
**Discipline and Take Corrective Action in Violation of the U.S. Constitution; Negligent**
**Retention Under New York State Law and Common Law)**

171.  Paragraph 1 through 152 are hereby incorporated by reference as if set forth herein.

172.  Defendant CITY OF NEW YORK has been put on notice of the overwhelming amount of

evidence that Defendant BOLOGNA has engaged and/or been alleged to have engaged in

repeated acts of unconstitutional and/or unlawful conduct with regard to individuals

engaged in First Amendment protected activity.

173.  Despite this evidence, Defendants CITY OF NEW YORK and KELLY have negligently

retained Defendant BOLOGNA as an employee of the NYPD and have failed to

supervise, train, instruct and discipline Defendant BOLOGNA to prevent: (a) the use of

excessive and unreasonable force on persons engaged in protected First Amendment

activities; and (b) the unlawful seizure and/or arrest of persons engaged in protected First

Amendment activities.

174.  Defendants CITY OF NEW YORK and KELLY knew or should have known of

Defendant BOLOGNA's unconstitutional conduct toward demonstrators and those

associated with them prior to Plaintiffs' unlawful seizure and arrest and the gratuitous use

of excessive force against Plaintiff STERLING.

175.  The actions of Defendant CITY OF NEW YORK and Defendant KELLY in retaining

and failing to instruct and discipline Defendant BOLOGNA has encouraged, ratified,

enforced and sanctioned his unconstitutional misconduct, which has resulted and caused

the injuries complained of herein, including the unlawful seizure, detention and arrest of

Plaintiffs STERLING and CARTAGENA on September 24, 2011 and the unlawful pepper spray attack by BOLOGNA against protestors including Plaintiff STERLING.

176. The acts and omissions of the CITY OF NEW YORK and Defendant BOLOGNA constitute deliberate indifference to the constitutional rights of Plaintiffs.

177. Liability is asserted directly against the CITY OF NEW YORK for the violations set forth in this Count.

### COUNT V
*Respondeat Superior* **Claims / Liability Asserted by Plaintiffs STERLING and CARTAGENA Against the CITY OF NEW YORK Under New York Common Law)**

178. Paragraphs 1 through 152 and Counts I through III (False arrest and excessive use of force) are hereby incorporated by reference as if set forth herein.

179. The conduct of Defendants BOLOGNA, SANCHEZ, HENRY and DOES occurred while they were on duty, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. As a result, Defendant CITY OF NEW YORK is liable to Plaintiffs for Counts I through III under the doctrine of *respondeat superior*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following:

a. Entry of a declaratory judgment that the sidewalk arrests described herein constitute violations of the First and Fourth Amendments to the U.S. Constitution, and to all other provisions of law as alleged;

b. Entry of a declaratory judgment that the use of orange netting and police lines to engage in the indiscriminate group arrests described herein constitute violations of

the First and Fourth Amendments to the U.S. Constitution, and to all other provisions of law as alleged;

c.  Entry of a mandatory injunction requiring Defendants to seal and destroy the records derived from the Plaintiffs' arrests, including all photographs, fingerprints and other identification or descriptive information;

d.  Entry of an order that disclosure be made in writing to Plaintiffs and the Court as to all entities and agencies to which such material, and other intelligence information derived from or relating to the underlying events, has been disseminated or made available and by whom gathered; and that all records gathered and disseminated be collected and sealed, including all copies of such disseminated records that may have been subject to further dissemination by others;

e.  Entry of an order declaring the arrests null and void, and authorizing Plaintiffs to deny that such arrest ever occurred in response to any inquiry, such as employment or educational or any other nature of inquiry;

f.  Compensatory damages against Defendants CITY OF NEW YORK, BOLOGNA, SANCHEZ, HENRY and DOES for violations of federal rights pursuant to 42 U.S.C. § 1983 in an amount appropriate to the proof adduced at trial;

g.  Compensatory damages against Defendants for violations of rights under New York State and common law, including against the CITY OF NEW YORK under *respondeat superior*, in an amount appropriate to the proof adduced at trial;

h.  Punitive damages against Defendant BOLOGNA, sued in his individual capacity, for causing, directing and ordering the arrests of Plaintiffs STERLING and

CARTAGENA, the use of unreasonable and excessive force against Plaintiff STERLING, and for the consequential injury including loss of freedom of expression and constitutionally protected rights of peaceful assembly;

i.  Punitive damages against Defendants HENRY, SANCHEZ and all DOEs who participated in or caused the false arrest of Plaintiffs STERLING and/or CARTAGENA;

j.  An award of Plaintiffs' reasonable attorney' fees and costs and expenses pursuant to 42 U.S.C. § 1988 and any other applicable statutes or rules or law; and

k.  Such other and further relief, including all appropriate equitable relief, as this Court may deem just and proper.

Dated: September 20, 2012

Respectfully submitted,

Carl Messineo
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. N.W.
Washington, D.C. 20001
T. 202.232.1180; F. 202.747.7747
Email: cm@justiceonline.org

Mara Verheyden-Hilliard
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. N.W.
Washington, D.C. 20001
T. 202.232.1180; F. 202.747.7747
Email: mvh@justiceonline.org

Andrea Costello
PARTNERSHIP FOR CIVIL JUSTICE FUND
617 Florida Ave. N.W.
Washington, D.C. 20001
T. 202.232.1180; F. 202.747.7747
Email: ac@justiceonline.org